IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAWRENCE STORM,** | : | CIVIL ACTION NO. 1:19-CV-602 |
| Plaintiff | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | |
| **SUPERINTENDENT THOMAS MCGINLEY, DEPUTY ANTHONY LUSCAVAGE, MAJOR VICTOR MIRACHI, K. TRIPP,** | : : : : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Lawrence Storm ("Storm"), an inmate who was housed at all relevant times at the State Correctional Institution at Coal Township, Pennsylvania ("SCI-Coal Township"), commenced this action pursuant to 42 U.S.C. § 1983 alleging that defendants failed to protect him from an inmate assault. (Doc. 1). The matter is proceeding *via* an amended complaint. (Doc. 31). Named as defendants are Superintendent Thomas McGinley, Deputy Superintendent Anthony Luscavage, Major Mirachi, and Major Tripp. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 42). For the reasons set forth below, the court will grant defendants' motion.

I.     **<u>Factual Background & Procedural History</u>**[1]

On December 26, 2017, a gang member allegedly asked Storm to pass gambling tickets to another gang member on his housing unit. (Doc. 31 ¶ 9; Doc. 47-1 at 4-5, Deposition of Lawrence Storm ("Storm Dep."), 4:17-5:21). In order to avoid confrontation, Storm initially agreed, but then discarded the contraband. (<u>Id.</u>) When Storm returned to his housing unit, he told the gang member that he lost the contraband. (Doc. 31 ¶ 9). Storm alleges that the gang member threatened him with violence. (<u>Id.</u>) Storm subsequently informed prison officials that he was threatened and requested placement in protective custody. (<u>Id.</u> ¶¶ 10, 11). Prison officials advised Storm that protective custody was not available at SCI-Coal Township, but he could either "stand up to the problem" or refuse to lock-up in his cell and be sent to the Restricted Housing Unit ("RHU"). (<u>Id.</u> ¶ 12). Storm asserts that he attempted to confront the problem with the gang member but was again

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. <u>Id.</u> Unless otherwise noted, the factual background herein derives from the amended complaint and attached exhibits, and defendants' Rule 56.1 statement of material facts and supporting exhibits. (Docs. 31, 32, 47, 47-1). Storm did not file a response to defendants' statement of material facts. The court accordingly deems the facts set forth by defendants to be undisputed. <u>See</u> LOCAL RULE OF COURT 56.1. (<u>See</u> also Doc. 49 ¶ 2) (advising Storm that failure to file a responsive statement of material facts would result in the facts set forth in defendants' statement of material facts being deemed admitted).

threatened with violence. (Id. ¶ 13). Therefore, Storm refused to lock into his cell. (Id.)

On December 28, 2017, Storm was issued a misconduct for refusing to lock into his cell and was sent to the RHU. (Doc. 47 ¶ 5). Storm stated that he did not want to return to his cell because he ran afoul of a prison gang and feared for his safety. (Id.; see also Doc. 47-2, Misconduct Number C069846). While in the RHU, Storm appealed the misconduct to the Program Review Committee ("PRC"), which included defendants Luscavage and Tripp. (Doc. 31 ¶ 14; Doc. 32 at 5). The PRC rejected the appeal. (Doc. 32 at 5). Storm alleges that he never appeared before the PRC because he was released from the RHU. (Doc. 31 ¶ 14).

On January 4, 2018, Storm sent an Inmate Request to Staff to defendant Tripp. (Doc. 32 at 7). Storm stated that he was threatened by a gang and requested placement in administrative custody. (Id.) Defendant Tripp advised Storm to raise this issue with the PRC. (Id.)

On January 11, 2018, Storm sent an Inmate Request to Staff to defendant Mirachi wherein he requested placement in protective custody due to threats from a gang. (Doc. 31 ¶ 14; Doc. 32 at 9). Defendant Mirachi informed Storm that he did not provide any credible information to support his claims that he was threatened and did not provide the identification of the alleged assailants. (Doc. 32 at 9). He also warned Storm that he would receive additional misconducts for refusing to go to population. (Id.) Storm filed an appeal to the Superintendent. (Id. at 11). On appeal, defendant McGinley upheld the decision of the PRC but modified the

3

sanction by reducing his disciplinary custody status from 30 days to time served. (Doc. 31 ¶ 15; Doc. 32 at 12).

On January 19, 2018, Storm was released into general population. (Doc. 47 ¶ 6; Doc. 47-3, Inmate Cell History). On January 23, 2018, Storm sent an Inmate Request to Staff to defendant McGinley seeking a transfer to a different housing block. (Doc. 31 ¶ 17; Doc. 32 at 14). In response, defendant McGinley instructed Storm to address this issue with the unit team. (Doc. 32 at 14).

On April 3, 2018, Storm was involved in an altercation with inmate Crow and was struck in the head with an electronic tablet. (Doc. 31 ¶ 18; Doc. 47 ¶ 7; Doc. 47-4, Misconduct Number D038250). Storm only speculates that this attack was related to the previous gang-related allegations he made and admits there is no evidence that connects the two incidents. (Doc. 47 ¶ 8). Storm had no previous problems with his assailant. (Id. ¶ 9).

Discovery has concluded and defendants now move for summary judgment. (Doc. 42). Storm failed to respond to defendants' motion and the time for responding has now passed.[2] Therefore, the motion is deemed unopposed and ripe for resolution.

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial

---

[2] Storm was directed to file a brief in opposition to defendants' motion for summary judgment and was admonished that failure to file an opposition brief would result in defendants' motion being deemed unopposed. (Doc. 49 (citing M.D. PA. L.R. 7.6); see Doc. 6, Standing Practice Order in Pro Se Plaintiff Cases, at 2).

would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  See Pappas, 331 F. Supp. 2d at 315.

### III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States,

5

and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### A. Lack of Personal Involvement

Defendants move for summary judgment based on a lack of personal involvement. (Doc. 48 at 5-9). Individual liability can be imposed under 42 U.S.C. § 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)); Sutton v. Rasheed, 323 F.3d 236, 249-50 (3d Cir. 2003). The personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or of actual knowledge and acquiescence." Argueta v. U.S. ICE, 643 F.3d 60, 72 (3d Cir. 2011) (quoting Rode, 845 F.2d at 1207). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the "conduct, time, place, and persons responsible." Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208. Moreover, a defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." C.H. *ex rel.* Z.H. v. Olivia, 226 F.3d 198, 201-202 (3d Cir. 2000). Allegations that a supervisor "had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor" do not suffice. Broadwater

6

v. Fow, 945 F. Supp. 2d 574, 588 (M.D. Pa. 2013) (citing C.H. *ex rel.* Z.H., 226 F.3d at 202).

Storm's claims against defendants McGinley and Luscavage are primarily based on their roles as Superintendent and Deputy Superintendent of SCI-Coal Township. Storm asserts that defendant McGinley is "legally responsible" for the operation of the prison and "all its inhabitants." (Doc. 31 ¶ 4). With respect to defendant Luscavage, Storm admits that he does not know if he was involved in responding to his staff requests and that he is suing Luscavage because he was on the PRC. (Doc. 47-1 at 53, Storm Dep. 51:13-21). It is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*. See Rode, 845 F.2d at 1207. Accordingly, to the extent that Storm's claims rely on a *respondeat superior* theory of liability against defendants McGinley and Luscavage, summary judgment in their favor is appropriate.

Storm's claims against defendants Mirachi and Tripp also fail. Storm sues these individuals based on their roles on the PRC and their responses to Inmate Requests to Staff slips. Their alleged improper after-the-fact responses to Storm's request slips concerning the matter do not constitute their personal involvement. See Rode, 845 F.2d at 1208; Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential) (allegations that prison officials and administrators responded inappropriately to an inmate's grievances do not establish the personal involvement of the officials and administrators in the underlying deprivation). Likewise, Storm's claim against defendant McGinley for reviewing, responding to, and denying his

7

appeals fails to establish sufficient facts to show his personal involvement in the alleged constitutional violation. See Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) (nonprecedential) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); Brooks, 167 F. App'x at 925. Because Storm failed to establish the requisite personal involvement of the defendants, the court will grant the motion for summary judgment on this ground.

### B. Eighth Amendment Claim

The Eighth Amendment requires a prison official to "take reasonable measures to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). While a prison official has a duty to protect prisoners from attacks by other prisoners, not every injury suffered by a prisoner at the hands of another translates to constitutional liability for the official responsible for the prisoner's safety. Id. at 833-34. An inmate making a failure to protect claim has the burden of proof to establish that a prison official both knew of and chose to disregard an "excessive risk to inmate health or safety." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837). The United States Court of Appeals for the Third Circuit has further held that the knowledge requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Id.; see Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir.

1997). Actual knowledge can be proven circumstantially where the general danger was obvious. Farmer, 511 U.S. at 842. For example, if the prisoner-plaintiff

> presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Id. at 842-43 (internal quotation marks and citation omitted). However, "a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring." Beers-Capitol, 256 F.3d at 133.

Here, Storm alleges that defendants failed to protect him from inmate Crow, who allegedly struck him in the head with an electronic tablet. Storm asserts that, prior to this incident, he warned defendants about threats of violence from gang members at SCI-Coal Township. Specifically, he contends that he wrote inmate requests and appeals. Defendants argue that Storm's claim must fail because he has not established that inmate Crow posed a serious risk of harm to him and that they were aware of any such threat of harm. (Doc. 48 at 10-11).

The uncontroverted record reflects that Storm's inmate requests and appeals did not mention inmate Crow and did not alert defendants about any danger posed by inmate Crow. Based on Storm's own account, the inmate requests and appeals merely stated that he was in danger after an incident with a gang. Storm has not provided any specific details of what, if anything, he told prison officials about

9

inmate Crow and has not provided any evidence that inmate Crow threatened him, had a history of violence, or was prone to violence against him. Importantly, Storm admits that there was no factual connection between the gang and the inmate who assaulted him. (Doc. 47 ¶ 8; Doc. 47-1 at 35-36, Storm Dep. 33:19-34:10). He also admits that he did not have any previous problems with inmate Crow and did not view him as a threat. (Doc. 47 ¶ 9; Doc. 47-1 at 37, 40, Storm Dep. 35:14-18, 38:10-11). Additionally, the incident wherein Storm alleges that he was threatened by a gang member was three months before his assault. From January 23, 2018—the date Storm sent a request slip to the Superintendent—to April 3, 2018—the date of the assault, Strom did not have any contact with prison staff about this issue. (Doc. 47-1 at 31, Storm Dep. 31:5-16). The alleged threat and the assault are too temporally remote to constitute deliberate indifference in violation of the Eighth Amendment. These instances were months apart with nothing to connect them save Storm's subjective sense that they were related.

Even if defendants were aware that inmate Crow had a history of violence, the Third Circuit has held that the risk that "an inmate with a history of violence might attack another inmate for an unknown reason" is too speculative to maintain a failure to protect claim against prison officials. Bistrian v. Levi, 696 F.3d 352, 371 (3d Cir. 2012), abrogated on other grounds by Mack v. Yost, 968 F.3d 311 (3d Cir. 2020). The Third Circuit recently reiterated this, affirming a grant of summary judgment to prison officials even where the inmate had reported a prior attack to an unnamed guard. See Zuniga v. Chamberlain, 821 F. App'x 152, 157 n.8 (3d Cir. 2020) (nonprecedential). In the instant case, the record establishes that the assault

10

by inmate Crow was not the product of "longstanding, pervasive, well-documented, or previously noted tensions between" Storm and inmate Crow. Blackstone v. Thompson, 568 F. App'x 82, 84 (3d Cir. 2014) (nonprecedential).

Finally, Storm has also failed to demonstrate that the alleged deprivation he suffered was "sufficiently serious," which is required to sustain a failure to protect claim. See Farmer, 511 U.S. at 834. Storm did not suffer a serious injury by inmate Crow and did not require any medical treatment after the incident. (See Doc. 47-2 at 6). The Third Circuit Court of Appeals has held that a plaintiff's failure to protect claim cannot proceed in the absence of a serious injury. See Matthews v. Villella, 381 F. App'x 137, 139 (3d Cir. 2010) (nonprecedential) (affirming district court's dismissal of failure to protect claim, finding that the plaintiff's "alleged injuries do not rise to the level of 'serious harm,' and he has not alleged a 'pervasive risk of harm' from this single incident").

The record would not permit a reasonable factfinder to conclude that defendants knew that inmate Crow posed a risk of harm to Storm and deliberately ignored that risk. Therefore, summary judgment in favor of defendants is appropriate.

**IV.     Conclusion**

We will grant defendants' motion (Doc. 42) and enter summary judgment in their favor.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:       August 27, 2021